IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-HC-02239-M

JAMES DARYL WALKER,  )
                     )
       Petitioner,   )
                     )
  v.                 )        ORDER
                     )
STATE OF NORTH CAROLINA, )
                     )
       Respondent.   )

On December 30, 2024, James Daryl Walker ("petitioner"), a state inmate, filed *pro se* a petition for a writ of habeas corpus under 28 U.S.C. § 2254. See Pet. [D.E. 1] (collaterally attacking his Oct. 15, 2003, Nash County conviction for first-degree murder). On June 16, 2025, the court allowed the action to proceed. Order [D.E. 3]. On July 28, 2025, respondent filed an initial answer [D.E. 6], a motion to dismiss, Mot. [D.E. 7], and a memorandum [D.E. 8], and supporting exhibits [D.E. 8-1 to 8-15]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the motion to dismiss, the response deadline, and the consequences of failing to respond. [D.E. 9]. On August 8, 2025, petitioner filed a response. [D.E. 10]. For the following reasons, the court grants respondent's motion.

Background:

The facts of petitioner's criminal case were summarized on direct appeal as follows:

The State presented evidence at trial that on the night of 10 November 2001 and during the early morning hours of 11 November 2001, Gerald Williams ("Williams"), Glenwood Loftin (the "victim"), and Jonathan Battle ("Battle") were driving in the Rocky Mount area to find a club to patron. After declining a couple of clubs due to inactivity, the three went to Moore's Ball Field at approximately 1:00 a.m. After a couple of conflicts with an individual identified as Rickshawn, Williams went outside and observed another conflict between Larry Williams and Jarvis Richardson. Williams, Battle, and Jeffrey Battle attempted to become

involved, but Williams was prevented from doing so by an individual identified as Bohanon. At approximately the same time, defendant began firing at the victim as the victim was running from defendant in the area where cars were parked outside of the club. Defendant followed the victim and continued shooting him, even when the victim continued to try to flee after falling on the hood of a car. After the shooting, defendant left with Shawn Brake ("Brake"). Although multiple guns were involved, including 9mm pistols belonging to both defendant and Brake, ballistics comparisons revealed that the victim was shot and killed by bullets fired from defendant's weapon.

Defendant also presented evidence at trial. Defendant called Shanell Nicole Williams as a witness. She testified that the victim was holding a beer bottle during the time the fights occurred and was shot by Brake after Brake told him to drop the bottle. Next, defendant testified that, during the time the fights were ongoing, the victim approached him with an upraised beer bottle, and, when the victim failed to heed defendant's warnings to "[s]top or [he was] going to shoot," defendant closed his eyes and shot at the victim because he was afraid the victim was going to attack him and injure him using the bottle as a weapon. Defendant testified he did not want to hurt the victim but also did not want to get hurt. Defendant said when he opened his eyes, he saw the victim falling on the car and heard additional shots.

Defendant was arrested, charged, and indicted for first-degree murder. At the close of the State's evidence and again at the close of all the evidence, defendant moved to dismiss the charge. The trial court denied defendant's motions, and the jury found him guilty of first-degree murder. Defendant was sentenced to life imprisonment without the possibility of parole.

State v. Walker, 170 N.C. App. 632, 633–34, 613 S.E.2d 330, 331–32 (2005).

On direct appeal, petitioner argued: 1) the trial court erred by allowing ballistics testimony and report where the witness who performed the testing did not testify, was not unavailable, and who petitioner did not have a prior opportunity to cross-examine; 2) the trial court erred by failing to charge the jury on self-defense in its final mandate; and 3) the short-form murder indictment under which he was charged did not meet constitutional requirements. Resp't Ex. 2 [D.E. 8-3].

On June 7, 2005, the North Carolina Court of Appeals ("NCCOA") filed a published opinion finding no error. Walker, 170 N.C. App. at 633, 613 S.E.2d at 331. Specifically, the

NCCOA found: 1) the ballistics evidence was properly admissible for non-testimonial purposes as corroborative of a testifying expert's opinion who independently analyzed the entirety of the ballistics evidence and since it helped form the basis of the testifying expert's opinion; 2) because Petitioner failed to object to the jury charge at trial, the plain error standard of review applied to the second claim, and the trial court's instruction was not plainly erroneous because the trial court correctly discussed the law of self-defense in the body of its charge and adequately explained to the jury that they could find petitioner not guilty by reason of self-defense in its mandate; and 3) petitioner's constitutional rights were not violated by the use of the short-form murder indictment because he received the presumptive term of imprisonment for the charge with which he was convicted and because the jury determined questions of fact related to his guilt or innocence, resulting in his first-degree murder conviction. Id. at 635–37, 613 S.E.2d at 333–34.

Petitioner filed a petition for discretionary review ("PDR") that the North Carolina Supreme Court ("NCSC") denied on August 23, 2005. See Resp't Ex. 4–6 [D.E. 8-5 to 8-7].

On March 14, 2006, petitioner filed in Nash County Superior Court a *pro se* motion for post-conviction DNA testing under the Innocence Protection Act of 2004, 18 U.S.C. § 3600. Resp't Ex. 7 [D.E. 8-8] (signed Feb. 17, 2006).

On May 22, 2006, Nash County Superior Court appointed counsel to represent petitioner as to this motion for post-conviction DNA testing. Resp't Ex. 8 [D.E. 8-9].

On May 29, 2009, after hearing arguments from counsel, the Nash County Superior Court filed an order allowing Petitioner's motion for DNA testing. See Pet. Attach. [DE 1-1] at 16.

On January 26, 2012, the Nash County Superior Court filed an order clarifying its order for DNA testing, listing specific items of evidence for delivery by the Nash County Sheriff's Office

3

to the North Carolina State Crime Laboratory (formerly the State Bureau of Investigation Crime Laboratory) for DNA testing. Resp't Ex. 9 [D.E. 8-10].

On December 13, 2021, petitioner filed through counsel a motion for appropriate relief ("MAR") in Nash County Superior Court asserting ineffective assistance of trial and appellate counsel. Pet. Attach. [D.E. 1-1] at 17-19. Petitioner later filed an amendment to this MAR. Resp't Ex. 10 [D.E. 8-11].

On February 3, 2023, the MAR Court denied petitioner's MAR. Pet. Attach. [D.E. 1-1] at 26, 28. The MAR Court determined that petitioner "failed to show that his previous attorneys' actions fell below the objective standard of reasonableness" and "failed to show that but for his previous attorneys' actions, the results of [his] trial and appellate proceedings would have been different." Id. at 28. Petitioner did not seek further review of the order denying this MAR.

On June 9, 2023, petitioner filed *pro se* a second MAR asserting, *inter alia*, that: 1) the trial court abused its discretion and violated due process by failing to charge the jury on self-defense in its final mandate; and 2) the State's failure to collect green beer bottles at the crime scene violated his right to due process because potential forensic evidence collected from them would have been favorable to his claim of self-defense. See Resp't Ex. 11 [D.E. 8-12] at 6, 8–14, 26–27.

On June 12, 2023, the MAR Court denied petitioner's second MAR on procedural default grounds. See Resp't Ex. 12 [D.E. 8-13] at 2.

On September 28, 2023, petitioner filed a petition for writ of certiorari ("PWC") in the NCCOA seeking review of the denial of his second MAR. See Resp't Ex. 13 [D.E. 8-14].

On December 1, 2023, the NCCOA denied the PWC as to the second MAR. See Pet. Attach. [DE 1-1] at 70.

4

Discussion:

Petitioner raises four grounds for relief: 1) the trial court violated the Confrontation Clause by allowing the testifying forensic firearms expert to rely on ballistics testing performed by another analyst to form an opinion that petitioner's gun fired the two bullets recovered from the victim's body; 2) the trial court erred by failing to include in its final mandate to the jury a possible verdict of not guilty by reason of self-defence; 3) the State's use of short-form murder indictment to charge him with first-degree murder violated his constitutional rights; and 4) the State's failure to collect beer bottles at the crime scene violated his right to due process because potential forensic evidence collected from them would have been favorable to his self-defence claim. Pet. [D.E. 1] at 1–9.

Respondent argues, *inter alia*, that the petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Resp't Mem. [D.E. 8] at 8–16.

In response, petitioner argues, *inter alia*, that his petition is timely "as the claims were brought within 28 U.S.C. § 2244(d) the statutory filing period and under applicable exception [sic]." Pet'r's' Resp. [D.E. 10] at 4, ¶1.

AEDPA requires an individual in custody pursuant to the judgment of a state court to file any application for a writ of habeas corpus within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005).

Section 2244(d)(1)(A) requires the court to determine when petitioner's judgment became final. See 28 U.S.C. § 2244(d)(1)(A). As he did not petition the United States Supreme Court for a writ of certiorari, see Pet. [D.E. 1] at 3, petitioner's conviction became final no later than November 21, 2005, ninety (90) days after the NCSC denied his PDR on August 23, 2005. See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) (reaffirming that "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."); Clay v. United States, 537 U.S. 522, 527 (2003) (finding, in the context of postconviction relief: "Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires" (citations omitted)); see also Supreme Court Rule 13.1 (providing ninety (90) days after entry of judgment to file petition for writ of certiorari in the Supreme Court).

Petitioner does not claim the Supreme Court made retroactively applicable to cases on collateral review a relevant newly recognized constitutional right. Cf. 28 U.S.C. § 2244(d)(1)(C).

To the extent petitioner asserts the delay between his request and receipt of post-judgment DNA evidence was state action preventing timely filing of his petition, 28 U.S.C. § 2244(d)(1)(B), he did not file this petition within one year of the date such impediment was removed, *i.e.*, when he had the requested DNA evidence circa March 5, 2020, see Resp't Ex. 13 [D.E. 8-14] at 7, ¶7.

As to section 2244(d)(1)(D), petitioner's instant grounds for relief "could have been discovered through the exercise of due diligence" by, at the latest, the date his conviction became final. See Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (holding the one-year limitation

6

period under § 2244(d)(1)(D) starts when a petitioner could have discovered the factual predicate "through public sources"), cert. denied, 540 U.S. 912 (2003); Green v. Johnson, 515 F.3d 290, 305 (4th Cir. 2008) (reaffirming Wade), cert. denied, 553 U.S. 1076 (2008)).

AEDPA's one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Hernandez v. Caldwell, 225 F.3d 435, 438–39 (4th Cir. 2000). An application for post-conviction review is pending from the initial state court filing date until final disposition in the highest state court. Taylor v. Lee, 186 F.3d 557, 560–61 (4th Cir. 1999). The running of the limitation period then resumes once the state's highest court resolves the state post-conviction proceedings. See Harris v. Hutchinson, 209 F.3d 325, 327–28 (4th Cir. 2000). The time between when a conviction becomes final and when a petitioner files a state application for post-conviction relief also counts against AEDPA's limitation period. Id. at 328; see Holland v. Florida, 560 U.S. 631, 635–38 (2010).

Here, AEDPA's one-year limitation period began when the conviction became final on November 21, 2005, and ran uninterrupted for one year until it expired on November 21, 2006.

To the extent petitioner argues his 2006 post-conviction motion for DNA testing tolled the limitation period, this motion sought relief under the Innocence Protection Act, 18 U.S.C. § 3600, see Resp't App. Ex. 7 [D.E. 8-8] at 1, but did not seek reexamination of the judgment imposing the sentence under the state statutory scheme, cf. 28 U.S.C. § 2244(d)(2). The court finds persuasive various other cases finding post-judgment motions for DNA testing do not toll AEDPA's one-year limitation period where so filing does not authorize a court to grant collateral relief on a judgment of conviction or sentence. See Woodward v. Cline, 693 F.3d 1289, 1293

7

(10th Cir. 2012) (finding motion for DNA testing did not toll AEDPA's limitation period because it was not an "application for collateral review" (citing Wall v. Kholi, 562 U.S. 545, 553 (2011))); Price v. Pierce, 617 F.3d 947, 952–53 (7th Cir. 2010) (finding state statute permitting postconviction forensic testing did not toll AEDPA's limitation period); Brown v. Secretary for Dept. of Corrections, 530 F.3d 1335, 1337–38 (11th Cir. 2008) (finding motion for DNA testing was not an "application for post-conviction or other collateral review" for AEDPA tolling where the state rule merely authorized discovery); Ealy v. Clark, No. 7:18CV00284, 2018 WL 6440885, at *4 (W.D. Va. Dec. 7, 2018) ("A claim for DNA testing, even if successful, would not necessarily spell speedier release from custody because merely ordering DNA testing would not impact the length of [the petitioner's] incarceration." (citing Skinner v. Switzer, 562 U.S. 521, 536 (2011))); accord Orr v. North Carolina, No. 3:20-CV-00573-MR, 2023 WL 1825088, at *2 (W.D.N.C. Feb. 8, 2023), appeal dismissed, No. 23-6152, 2023 WL 4197965 (4th Cir. June 27, 2023); cf. Kares v. Morrison, 77 F.4th 411, 419-21 (6th Cir. 2023) (finding state prisoner's post-conviction DNA testing motion tolled AEDPA's one-year limitation period where the state statute did not require filing of a separate action to initiate reexamination of the underlying judgment); Hutson v. Quarterman, 508 F.3d 236, 240 (5th Cir. 2007) (per curiam) (finding state post-conviction DNA testing request constitutes an application for "other collateral review" where the statute outlines procedures for reviewing underlying judgment upon receiving post-conviction DNA testing results and empowered court to release the state prisoner if the DNA testing results were favorable).

Alternatively, even presuming petitioner's 2006 motion for post-conviction DNA testing did toll AEDPA's one-year limitation period, the Nash County Superior Court's Order directing delivery of DNA evidence issued on January 26, 2012, see Resp't App. Ex. 11 [D.E. 8-10] at 1,

8

and petitioner's PWC acknowledges that the results of DNA testing were received circa March 5, 2020, id. Ex. 13 [D.E. 8-14]. Thus, because petitioner did not file his first MAR until December 13, 2021, see Pet. Attach. [D.E. 1-1] at 17–19, more than one year after the DNA testing results were obtained, the AEDPA's one-year limitation period would have expired within that interim.

To the extent petitioner instead challenges the state court's actions in response to his post-conviction DNA testing motion, "claims alleging defects in state post-conviction procedures do not constitute grounds for federal habeas relief, because such claims attack a collateral proceeding, not the basis for the detention itself." Ealy, 2018 WL 6440885, at *5 (citing Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988)).

Additionally, neither of petitioner's MAR filings reopened his time for filing a federal habeas petition. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (recognizing state applications for collateral review cannot revive an already expired federal limitation period). Thus, absent equitable tolling, the instant habeas petition is untimely.

Equitable tolling of AEDPA's one-year limitation period applies only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (quotation omitted). A court may allow equitable tolling under section 2244 "in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotations omitted). "[A]ny invocation of equity to relieve the strict application of a statute of limitations," however, "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330.

9

Succinctly stated, there is no showing that petitioner has diligently pursued his rights and that an extraordinary circumstance prevented him from timely filing a federal habeas petition. Cf. Holland, 560 U.S. at 649.

To the extent petitioner instead asserts that his petition's untimeliness is excusable because he is unfamiliar with the law, is incarcerated, or he lacked legal representation, such grounds are insufficient for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512–13 (4th Cir. 2004); Harris, 209 F.3d at 330–31. Thus, because petitioner as not made the requisite showing, equitable tolling is not warranted. See Holland, 560 U.S. at 649; Green, 515 F.3d at 304.

A habeas petitioner also may overcome AEDPA's one-year limitation period upon a showing of "actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 393–94 (2013); see Finch v. McKoy, 914 F.3d 292, 294 (4th Cir. 2019); Hayes v. Carver, No. 17-7441, 2019 WL 1757684, at *2–4 (4th Cir. Apr. 22, 2019). Although actual innocence, if proved, serves as a "gateway" to the review of time-barred or otherwise procedurally barred federal claims, "tenable actual-innocence gateway pleas are rare" because "'a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see Teleguz v. Pearson, 689 F.3d 322, 329 (4th Cir. 2012). To present a credible actual-innocence claim, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324; see Bousley v. United States, 523 U.S. 614, 623 (1998) (noting "'actual innocence' means factual innocence, not mere legal insufficiency." (citation omitted)).

10

Because petitioner's grounds for relief are unsupported by "new reliable evidence," his bald contentions of "actual innocence" fail to satisfy the exacting Schlup standard, and the court grants respondent's motion to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1).

Respondent also argues that, to the extent they amount to constitutional claims, petitioner's second and fourth grounds for relief are procedurally defaulted. Resp't Mem. [D.E. 8] at 25–29.

In response, petitioner baldly states: "to the extent procedural default is alleged, Petitioner asserts cause and prejudice and that a fundamental miscarriage of Justice would occur if the petition is not heard [sic]." Pet'r's' Resp. [D.E. 10] at 11, ¶4.

Under AEDPA, a federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless 1) the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or 2) the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling

11

> Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc), cert. denied, 534 U.S. 830 (2001).

Federal courts apply a highly deferential standard of review under 28 U.S.C. § 2254(d) and (e). See Dunn v. Madison, 583 U.S. 10, 12 (2017) (per curiam), reh'g denied, 583 U.S. 1086 (2018); Cullen v. Pinholster, 563 U.S. 170, 181 (2011). Congress intended the standard outlined in AEDPA to be "difficult to meet." White v. Woodall, 572 U.S. 415, 419 (2014) (citation and internal quotation marks omitted).

"A habeas petitioner meets this demanding standard only when he shows that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Madison, 583 U.S. at 12 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). Moreover, a state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Absent a valid excuse, a state prisoner must exhaust all available state-court remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b); Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default"); see also Rose v. Lundy, 455 U.S. 509, 522 (1982). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

To satisfy the exhaustion requirement, petitioner must "fairly present" his claims to the state court. See Picard v. Connor, 404 U.S. 270, 275 (1971); Baker v. Corcoran, 220 F.3d 276,

12

288 (4th Cir. 2000). A claim is "fairly presented" if petitioner presents the "substance of his federal habeas corpus claim" to the state court, including "both the operative facts and the controlling legal principles." Pethtel v. Ballard, 617 F.3d 299, 306 (4th Cir. 2010) (quotations and citation omitted). A North Carolina prisoner satisfies the exhaustion requirement by appealing the conviction to the NCCOA then petitioning the NCSC for discretionary review, or by filing an MAR and then a PWC in the NCCOA. See N.C. Gen. Stat. §§ 7A-27, 7A-31, 15A-1415, 15A-1422. Petitioner has the burden of proving a claim was exhausted. See Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994), cert. denied, 513 U.S. 1047 (1994).

The procedural default doctrine generally precludes a federal court from reviewing the merits of a claim a state court found to be procedurally barred on an "independent" and "adequate" state ground. Martinez v. Ryan, 566 U.S. 1, 10 (2012); see Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) ("A procedural default occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (citation omitted)). A state rule is "adequate" if it is firmly established and consistently applied by state courts, McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000), and "independent" if the rule does not depend upon a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

> A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court. "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."

Baker, 220 F.3d at 288 (citation omitted).

13

For review of a procedurally defaulted claim, petitioner must show cause and prejudice resulting from the alleged federal law violation, or that failure to consider the claim will result in a fundamental miscarriage of justice. Plymail v. Mirandy, 8 F.4th 308, 316 (4th Cir. 2021). "Cause" means that something external prevented him from complying with state procedural rules. Coleman v. Thompson, 501 U.S. 722, 753 (1991). "Prejudice" means that he was actually prejudiced by the alleged violation of law. United States v. Frady, 456 U.S. 152, 167–68 (1982).

Section 15A-1419(a)(3) of the North Carolina General Statutes provides that an MAR shall be denied when a defendant is in an adequate position to have raised the claim on appeal but did not do so. Section 15A-1419(a)(3) is an independent and adequate state procedural bar. See Lawrence v. Branker, 517 F.3d 700, 714–15 (4th Cir. 2008); Rose v. Lee, 252 F.3d 676, 683–84 (4th Cir. 2001); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998).

As to petitioner's second ground for relief – that the trial court erred by failing to include in its final mandate to the jury a possible verdict of not guilty by reason of self-defence – the second MAR Court found he raised this claim on direct appeal, which the NCCOA denied, and, to the extent he sought to assert new, related grounds with respect to jury instructions, this issue could have been raised on direct appeal but he failed to do so, such that this claim was procedurally defaulted under N.C. Gen. Stat. § 15A-1419(a)(3). See Resp. Ex. 12 [D.E. 8-13] at 3.

As to petitioner's fourth ground for relief – that the State's failure to collect green beer bottles at the crime scene violated his right to due process because potential forensic evidence collected from them would have been favorable to his claim of self-defence – the second MAR Court found that petitioner could have raised this issue in his first MAR but he failed to do so such that this claim now was procedurally defaulted under N.C. Gen. Stat. § 15A-1419(a)(3). Id. at 2.

14

In short, petitioner fails to show that these procedural default findings by the second MAR Court were based on an unreasonable determination of the facts or reached a result contrary to, or unreasonably applied, clearly established federal law. See Madison, 583 U.S. at 12; Pinholster, 563 U.S. at 181; Williams, 529 U.S. at 405. Despite his bald contentions otherwise, petitioner also fails to establish cause, prejudice, or a fundamental miscarriage of justice to excuse this procedural default. See Coleman, 501 U.S. at 748; McCarver, 221 F.3d at 588. Accordingly, this court may not review the merits of these procedurally barred constitutional claims. See Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003).

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court also denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## Conclusion:

In sum, the court: GRANTS respondent's motion to dismiss [D.E. 7]; DISMISSES the petition [D.E. 1]; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED this 24th day of October, 2025.

RICHARD E. MYERS II
Chief United States District Judge

15